# UNITED STATES DISTRICT COURT
for the

District of Minnesota

UNITED STATES OF AMERICA

v.

WALTER DAVID DUNCAN
RICHARD ANDREW DAVIDS
JOHN CRAIG ZDYBAL

Case No. 15-mj-653 LIB

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about August 15, 2015, in Cook County, in the State and District of Minnesota, defendant(s)

conspiring to bring in and harbor certain aliens

in violation of Title 8, United States Code, Section(s) 1324(a)(1)(A)(i).

I further state that I am a Supervisory Border Patrol Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Complainant's signature

Wesley Coleman, Supervisory Border Patrol Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 8/17/15

City and State: Minneapolis, MN

_____
Judge's Signature

Leo I. Brisbois, U.S. Magistrate Judge
Printed Name and Title

SCANNED
AUG 17 2015
U.S. DISTRICT COURT MPLS

**STATE OF MINNESOTA**

**ss. AFFIDAVIT OF WESLEY W. COLEMAN**

**COUNTY OF HENNEPIN**

1) I, Wesley W. Coleman, am a Supervisory United States Border Patrol Agent with the United States Department of Homeland Security. I am currently assigned to the Grand Forks Border Patrol Sector (GFN) Criminal Prosecution Unit. I have been employed as a Border Patrol Agent since October 23, 1988.

2) As a Border Patrol Agent, my duties and responsibilities include, but are not limited to, the enforcement and investigation of violations of both the criminal and administrative aspects of United States immigration law. I have received training in the investigation of human smuggling, among other things, and have participated in more than 700 investigations of individuals who have violated federal law. I have also assisted other law enforcement officers in their investigations of violations of federal law. As part of my investigations, I have conducted reviews of alien files, participated in search warrants and conducted interviews and arrests of individuals who have violated federal laws, among other things.

3) This affidavit is based upon my training, experience, personal knowledge, and review of official reports and documents related to this investigation as well as on my discussions with other law enforcement officers and agents directly involved in this investigation.

4) This affidavit is made for the purpose of establishing probable cause to support a criminal complaint charging Walter David DUNCAN, Richard Andrew DAVIDS, and John Craig ZDYBAL with conspiring to bring in and harbor certain aliens, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(i), (a)(1)(v)(I) and (a)(1)(v)(II). This affidavit does not set forth each and every fact known to me, but instead sets forth sufficient facts to establish probable cause for the requested arrest warrants.

## ANONYMOUS CALLER

5) On August 10, 2015 at approximately 11:06 a.m. an anonymous caller spoke with Supervisory Customs and Border Protection Officer Brian Cooley and explained a plan whereby DUNCAN would enter the United States illegally with the assistance of two other individuals. The caller explained that DUNCAN was inadmissible to the United States based on his prior criminal record, including convictions related to fraud, importing controlled substances, and sexual assault.

6) The caller described DUNCAN's plan to wade and swim across the Pigeon River from the area near Pigeon Falls, Ontario, Canada, to enter the United States near the Grand Portage, Minnesota port of entry in order to avoid inspection by United States Customs and Border Protection Officers. The caller advised that DUNCAN intended to enter the United States via the Pigeon River sometime in the next two weeks, and explained that DUNCAN had entered the United States in this same manner as many as four to five times in the past. According to the caller, DUNCAN knew he was inadmissible to the United States; however, DUNCAN needed to enter the United States in order to conduct business with a major motor carrier in Minnesota. The caller would not divulge the name of the business that DUNCAN owns in Ontario.

7) The caller further stated that DUNCAN was presently in Bogota, Columbia, and would be flying into Toronto, Ontario, Canada the next day. Duncan lives in the Toronto area, near the Pearson Airport. Based on DUNCAN's past conduct, the caller believed that DUNCAN would first go to his home, and then fly on Porter Airline from Island Airport in Toronto into Thunder Bay, Ontario, on Thursday (August 13) or Friday (August 14). The called believed DUNCAN would meet with a group of people in Thunder Bay to plan his trip across the United States Border. The caller stated that he has never been directly involved in bringing DUNCAN across the border, but was informed of the conspiracy to commit the unlawful act.

8) The caller advised that, in the past, a rental vehicle would drive DUNCAN from Thunder Bay to the High Falls Road on the Canadian border. There, DUNCAN would cross the Pigeon River, in the rapids either immediately above or immediately below Middle Falls. The person driving the rental vehicle would cross the Grand Portage, Minnesota port of entry and go to the Grand Portage Casino. After crossing the river, the caller believed DUNCAN would walk in the woods behind Ryden's Border Store making sure to stay clear of the trails located within the Grand Portage State Park. Just past Ryden's Gas Station, DUNCAN would wait in the ditch/woods area along Minnesota Highway 61 near the cliff areas of Mt. Josephine. Typically, the rental car driver/pick up person would wait four hours and then return to the area where DUNCAN would be waiting.

9) The anonymous caller called the Grand Portage port of entry on two more occasions and provided the names of DUNCAN's co-conspirators - Richard Andrew DAVIDS and Craig John ZDYBAL - both Canadian citizens and acquaintances of DUNCAN. The caller also provided additional details regarding the group's conspiracy to assist DUNCAN to illegally entry into the United States, including the date DUNCAN intended to enter the United States illegally and the time of day that DUNCAN intended to cross into the United States.

## THE INVESTIGATION AND ARRESTS

**10)** On Saturday, 8/15/2015, at 6:18 AM, a silver KIA Optima, bearing Ontario License Tag BTSW 343, entered the primary inspection lane at the Grand Portage Port of Entry. The driver was identified by CBP Officer Cory Peterson as Richard Andrew DAVIDS. DAVIDS advised CBP Officer Peterson that the purpose of his trip to the United States was to visit the Grand Portage casino. The vehicle was allowed to pass through the port of entry. CBP Officer Peterson advised the U.S. Border Patrol of DAVIDS' entry.

**11)** Border Patrol Agents Jedediah Wooten and Nathan McMillin kept DAVIDS' and his vehicle under surveillance until the vehicle parked at the casino. After some time, DAVIDS was observed leaving the casino in his vehicle and drove to the north of the casino on Minnesota Highway 61. DAVIDS was then observed driving his vehicle south towards the casino and pulling into the gas station across from the casino. At that time, there were two additional occupants in the vehicle, including one occupant who appeared to be DUNCAN based on a comparison to a photograph the agents had obtained.

**12)** Border Patrol Agents Matthew Curran, Wooten, and McMillin pulled in behind the vehicle driven by DAVIDS, and placed all three occupants under arrest. The Agents observed that DUNCAN and the third occupant of the vehicle, later identified as John Craig ZDYBAL, were wearing wet clothing, which is indicative of having just crossed the Pigeon River. All three individuals, DUNCAN, DAVIDS, and ZDYBAL, were transported to the Grand Portage port of entry where they were detained for processing and further investigation.

**13)** ICE/HSI Special Agents Ryan Sholz and Jeff Suronen conducted interviews of all three subjects. Prior to interviewing the three suspects, ICE/HSI Special Agents and USBP Agents conducted preliminary investigations of all three subjects by checking all applicable United States immigration records and by reviewing both United States and Canadian criminal records on all three subjects. The Royal Canadian Mounted Police provided assistance with flight information and other records checks concerning Canadian criminal and immigration records.

**14)** After being advised of and waiving his Miranda rights, Richard Andrew DAVIDS explained that he has known DUNCAN and they have been friends for a long time. DAVIDS has previously worked for DUNCAN and they both reside in Mississauga, Ontario, Canada. Prior to departing Toronto for Thunder Bay, DAVIDS was

approached by DUNCAN who asked DAVIDS if DAVIDS would like a free trip to Thunder Bay in order to help him enter the United States illegally. DAVIDS agreed to help DUNCAN in exchange for a free trip to Thunder Bay.

15) On August 14, 2015, DAVIDS, along with DUNCAN and ZDYBAL, flew together from Toronto to Thunder Bay by Commercial Air. DUNCAN paid for the airline tickets. Upon arrival at Thunder Bay, DAVIDS paid for a rental car, the silver KIA described herein. DAVIDS hoped to be reimbursed by DUNCAN for the cost of the rental at a later time.

16) DAVIDS, DUNCAN and ZDYBAL proceeded to the Valhalla Hotel in Thunder Bay. DUNCAN paid the lodging expenses of all three subjects at that time. The remaining arrangements were made at the hotel that evening. DAVIDS was to drive the rental car through the Grand Portage port of entry to the Casino and wait. After waiting long enough to give DUNCAN and ZDYBAL time to cross the Pigeon River enter the United States illegally, DAVIDS would then pick DUNCAN and ZDYBAL up on the side of the road and transport them further into the United States.

17) DAVIDS was then supposed to transport DUNCAN and ZBYDAL to Duluth, Minnesota, where DUNCAN and ZDYBAL were to rent a car and travel to Chicago, Illinois for DUNCAN's business meeting. DAVIDS was then going to return to Thunder Bay and fly back to Toronto with an airline ticket paid for by DUNCAN.

18) After being advised of and waiving his Miranda rights, Craig John ZDYBAL explained that he has known DUNCAN and his family for five years. ZDYBAL has also previously worked for DUNCAN and lives near DUNCAN.

19) A few days before the trip to Thunder Bay, ZDYBAL was approached by DUNCAN. DUNCAN asked ZDYBAL if he would like a free trip to Thunder Bay and into the United States in order to help him enter the United States illegally. DUNCAN explained he would need ZDYBAL's assistance crossing through the "forest." DUNCAN did not want to cross the Pigeon River and surrounding woods alone for fear of being attacked by a bear or falling in the rough terrain. ZDYBAL was then to the travel with DUNCAN into the United States for DUNCAN's business meeting at a destination he was not entirely sure of.

20) A criminal history check of United States and Canadian records revealed that DUNCAN has prior convictions for importing narcotics from Mexico and sexual assault which make him ineligible to legally enter the United States.

**21)** A check of the relevant immigration records of the United States and Canada revealed that in 1996 DUNCAN was encountered by United States Customs Officers at the U.S. Customs Preclearance Station at the Toronto, Ontario, Canada, airport. DUNCAN was determined to be inadmissible to the United States based on the above-referenced criminal convictions. DUNCAN fled the Toronto airport while being processed. A Notice to Appear before an Immigration Judge in the United States was issued, but later cancelled on 9/03/1993 by the Immigration Judge.

**22)** Based on the foregoing, it is your Affiant's belief that there is probable cause to believe that Walter David DUNCAN, Richard Andrew DAVIDS, and Craig John ZDYBAL violated Title 8, United States Code, Sections 1324(a)(1)(A)(i), (a)(1)(v)(I) and (a)(1)(v)(II), by conspiring to bring in and harbor certain aliens and aiding and abetting the same.

Further your Affiant sayeth not.

Wesley W. Coleman
Supervisory Border Patrol Agent

SUBSCRIBED and SWORN to before me this 17 day of August, 2015.

Leo I. Brisbois
United States Magistrate Judge